## Owsley's Administratrix v. Gregory.

### (Decided May 10, 1935.)

H. C. CLAY for appellant.

J. B. WALL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On, prior, and subsequent to December 14, 1929, the Central Kentucky Dry Goods Company of Lexington, Ky., was a corporation under the laws of the state of Delaware, with a large capitalization. It will hereafter be referred to as the "Company." Its business was the operation of chain dry goods stores. S. S. Noble was its president, and J. W. Hutcheson was a traveling salesman for its stock. Dr. J. G. Owsley, who was defendant below, was a country physician located in a rural section of Laurel county near which was a village in which appellee and plaintiff below, G. W. Gregory,

conducted a mercantile establishment and was, perhaps, the leading citizen in it. Prior to the date mentioned, Hutcheson had sold to defendant 130 shares of stock in the company upon which he had received very satisfactory dividends, and he became very much pleased with his investment. Some days prior to December 14, 1929, Hutcheson had visited plaintiff at his store with the view of selling him some stock in the company, but no agreement was reached during that visit. However, on that date Hutcheson and Noble, the president of the company, again visited plaintiff at his store and succeeded in selling him 50 shares of the stock at the then current price of $20 per share, and plaintiff issued his check to the company for that amount and delivered it to Hutcheson, who sent it to the company, which was soon followed by the mailing of the stock to plaintiff, which he duly received.

In the spring of 1930, plaintiff received 3 per cent. dividend on his stock and in August of the same year he received 6 per cent. dividend thereon, but later the effects of the financial crash that had its beginning in the latter part of 1929 began to be seriously felt, and some time in 1931 or early part of 1932, the record not disclosing, a receiver was appointed for the company and he took charge of it under an order of court directing him to continue to operate the business, which he did. After that, and on June 25, 1932, plaintiff filed this action against defendant in the Laurel circuit court seeking to recover against him the amount paid for the stock with interest from the date of its payment, less the dividends he had received, and as grounds for the action plaintiff alleged in his petition, as finally amended by two or three amendments thereto, that defendant had sold the stock to plaintiff, which the latter claimed was not purchased by him from the company but from defendant, and that he had falsely represented to plaintiff that the stock "was very valuable"; that the company was (then) a "going concern," and that it was making money; that it was paying large dividends; and that "defendant agreed and promised that if plaintiff was not fully satisfied with said stock, and that if it was not all he said it was, and that if this plaintiff at any time became dissatisfied with said stock, that he would refund to this plaintiff his $1,000.00 with interest and take up the stock."

'An amended petition attempted to withdraw the allegation that plaintiff had purchased the stock from defendant and averred that while the stock was purchased from the company through its representative, Hutcheson, yet defendant was present at the time and made the representations and agreement, as set out in the original petition, and that the former were false but were relied on by plaintiff, and but for which he would not have made the purchase. The pleadings of defendant put in issue all the grounds upon which recovery was sought and also interposed some affirmative defenses, among which was that plaintiff ratified his contract of purchase by declining to return his stock to the company and receive from it the consideration he had paid therefor, and by expressing his determination to retain the stock, and all of which was done after he had received his dividends. Following pleadings and motions made the issues and after extensive proof taken the court, as a chancellor (the petition having been filed as an equity one), sustained the prayer of the petition and rendered judgment against defendant for the amount asked, and to reverse it he prosecutes this appeal. Since the appeal was perfected, defendant has died and his widow has qualified as his administratrix and the appeal has been revived in her name as such personal representative.

It will be perceived that there was a clear misjoinder of causes of action in plaintiff's pleading, even if his contention that he made the purchase of his stock from defendant had been proven, since all of the grounds alleged for recovery, except one, sounded in tort, being based on false and fraudulent representations, the exception being his alleged agreement to return to plaintiff the purchase price of his stock if he became dissatisfied therewith. But we fail to discover anywhere in the record any motion to elect, and that irregularity will not be further noticed.

Our appraisement of the testimony most thoroughly convinces us that plaintiff utterly failed to establish the alleged grounds of his action, even by his own testimony. But when it is viewed in the light of that introduced by defendant the grounds for the action are made so dim as to almost, if not entirely, disappear. Especially is that true after reading between the lines and vewing the situation in the light of the then prevailing

conditions. They were—that at the time plaintiff purchased his stock the company that issued it was, so far as this record discloses, doing a prosperous business and paying handsome and enticing dividends to its stockholders. It continued to do so thereafter for at least nine months, during which plaintiff received a dividend of 1 per cent. per month on his investment. Plaintiff, as we construe the testimony in the record, naturally became dissatisfied when dividends ceased to be received. Defendant and Hutcheson both testified that when the stock was sold the latter, on behalf of the company, stated to plaintiff that if he should become dissatisfied within a reasonable time with the stock the company would refund to him the purchase price on the surrender of his certificate. Plaintiff claims that defendant personally made that promise, but we are convinced that the proof overwhelmingly shows that it was made by Hutcheson for the company and not by defendant. The proof furthermore shows by a preponderance of the testimony that plaintiff, when he did become dissatisfied after the cessation of payment of dividends, approached defendant and expressed his dissatisfaction. Defendant then promised to see the company and to induce it, if possible, to rescind the purchase of the stock. It agreed to do so upon the surrender of the certificate by plaintiff, but when defendant so reported to him he declined to rescind and expressed his satisfaction with the stock.

It was alleged in the petition that at the time of the purchase of the stock the company was insolvent; was not making money, and that the stock was worthless, etc., and that defendant knew it, but there is not a scintilla of proof in the entire record to establish any such averments, except the bare fact that when the depression began to squeeze, and debtors of the company began to default in payments to it, a receiver was appointed at the instance of some of its creditors—not for the purpose of liquidation, but to continue the operation of the business, and which fact alone was not of itself sufficient to establish insolvency, even at the time of the appointment of the receiver, much less at the time plaintiff made his purchase. The substance of plaintiff's testimony was—that defendant expressed satisfaction with his investment; that he thought it was a good com-

pany and a "good concern"; and that he thought the investment would be a good one. Such expressions are not legal false representations forming the basis of a cause of action in favor of one to whom they are made and who may act upon them, since they are only, at most, puffing expressions of opinion, and in this case seem to have been justified from the situation as it existed on December 14, 1929, when plaintiff acquired his stock.

Defendant's opinion, as then so expressed, was based upon the fact that he had been receiving most satisfactory dividends, and the outward appearances were such as to inspire the belief that the company was prosperous and thriving, and so far as this record shows every one having any connection with it was so convinced. As an evidence of defendant's good faith, he later, and before the receivership, purchased an additional 400 shares of stock at the price of $8,000, which is the strongest evidence that he acted in good faith in recommending the investment by plaintiff.

The witnesses present at the time when it was made, except a clerk in plaintiff's store, contradict his statement that defendant personally agreed to take up his stock and refund him the price paid for it if he became dissatisfied, and the testimony of that witness is by no means convincing, since his manner of giving it, as well as his position at the time at a place where it was difficult for him to hear the conversation of the parties, greatly weakens the probative force of his statements. Moreover, there is not a scintilla of proof in the entire record that defendant had the least interest in the sale of the stock to plaintiff. It was a transaction exclusively between the latter and the company and all that the defendant is proven to have said on that occasion was but the expression of satisfaction on his part with his investment, plus his belief, as based upon the facts he then possessed, that the company would continue to prosper and succeed in a manner to make the investment a desirable one. The fact that defendant had no personal interest in the sale of the stock to plaintiff is also most convincing that he did not agree personally to refund to plaintiff the amount of the purchase price of his stock even if such a promise, if made, could be enforced as being supported by a sufficient con-

sideration; a question that we decline to discuss or determine, since it is unnecessary to the disposition of the case.

Neither plaintiff nor any other witness testifying for either party made a single statement in any wise tending to show that the company was insolvent at the time plaintiff purchased his stock, nor did any witness state the amount or value of its property at that time or the extent of its indebtedness, if any. The only facts proven were that outwardly it was a prosperous concern and was everything that plaintiff claims the defendant represented it to be. Likewise, there is a total absence of proof to show that such representations, if otherwise actionable, were false at that time, which is the one that measures the rights of the parties to this litigation. Furthermore, there is nothing to show but what the company is now solvent, since the record does not disclose what has ever become of the receivership, and so far as we are informed it may now be terminated and the affairs of the company being operated by its officers in the same manner as before the appointment of the receiver, who, we repeat, may have been appointed because of frozen assets; or because of disagreement between stockholders, or for any other cause consistent with solvency.

It was also proven without contradiction that between the time plaintiff acquired his stock and the appointment of the receiver the value of each share of stock increased on the market from $20, the amount plaintiff paid for his, to $30 per share, and that it was freely dealt in at the latter price.

The entire record portrays this picture—that defendant was jubilant over his investment in 130 shares of the company, which he held at the time plaintiff acquired his, and he did not hesitate to tell his friends about it, one of whom was plaintiff, and that all he told them was based upon well grounded belief on his part and prompted by the best of faith. Also that plaintiff was satisfied with his purchase as long as he received dividends, and that their payment was stopped, not because of any fact that defendant misrepresented, but because of the destructive effects of the business depression prevailing throughout the country which began in the fall or winter of 1929, and that plaintiff's dissatisfaction, so produced, led him to seek to recoup

his loss and which culminated in a determination to sue defendant, but in which effort he is not entitled to succeed for the reasons we have stated.

We have not deemed it necessary to mention or discuss two other grounds urged for a reversal, the first of which is the action of the court in overruling defendant's motion for a continuance of the trial at the time it was had. We are inclined to believe that the court did err in that regard under the showing made, but, since there is no necessity therefor, we will not pursue the discussion further. The other unnoticed ground is that plaintiff was guilty of laches in retaining his stock until after the company went into the hands of a receiver before proceeding against defendant, even if he had legal grounds therefor, but for the same reason we will neither discuss or dispose of it.

One other contention made by plaintiff should, perhaps, be referred to, and which is, that at the time plaintiff made the purchase of his stock defendant was a director in the company and which was true, but he had only been such for about one month and following his election he had obtained no information with reference to the financial standing of the company. He had, perhaps, attended only one meeting of the directors and no business was transacted at it except perfunctory matters not leading to a knowledge of the solvency or insolvency of the company, since its management and general course of the prosecution of its business was in charge of trusted officers against whom at that time there were no grounds for questioning their inefficiency or their disloyalty to their employer.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to enter one dismissing the petition.